## MEYER *v.* BROWN.

EVIDENCE—RECORDS OF RAILROAD.

> The books of a railroad, in which are entered, in the regular course of business, the weights of cars under the supervision of the witness, are admissible in evidence to prove the weight of wood shipped by plaintiff to defendant.

|130|449|
|f140|572|

Error to Wexford; Chittenden, J.   Submitted November 21, 1901.   (Docket No. 148.)   Decided May 8, 1902.

*Assumpsit* by Louis Meyer, Louis H. Meyer, and James T. Meyer, copartners as the Meyer Hardware Company, against Frank E. Brown and John Sehler, copartners as Brown & Sehler, for goods sold and delivered. From a judgment for plaintiffs, defendants bring error. Affirmed.

*Ward & Brown*, for appellants.

*I. C. Wheeler*, for appellees.

HOOKER, C. J. This case was brought in justice's court, and after trial there appealed to the circuit, where it was tried before a jury, and verdict and judgment rendered for plaintiffs. The plea was the general issue.

It appears that the plaintiffs are doing business at Manton, this State; defendants at Grand Rapids. An arrangement was made by which the plaintiffs were to ship to defendants at Grand Rapids one car load of dry beech and maple wood.. The wood was duly shipped. Defendants claim to have inspected it after its arrival at Grand Rapids, and found, as they claim, that it was green wood, and not dry, as agreed. They immediately notified the plaintiffs that they refused to accept the wood, as it did not comply with the contract. It is plaintiffs' claim that this wood was cut between the 1st and 8th days of September, 1897, and sent to defendants some time in February, 1898; that it was dry wood, and in all respects in compliance with the contract. The railroad car in which the wood was shipped was marked "No. 2024, C., J. & M." This action is for the price of the wood sold.

On the trial the plaintiffs claimed that the weight of the wood was evidence that it was dry wood, and gave some evidence which, if competent, would tend to support their claim. They called as a witness one James Murphy, who testified that he was yardmaster and weighmaster on the G. R. & I. road. He was asked:

"*Q.* Have you the weight of a car weighed on the 19th of February,—2024, C., J. & M.?

"*A.* Yes.

"*Q.* Will you give the weight of that car?

"*Defendants' Counsel:* Wait. Did you weigh that car yourself?

"*A.* I cannot positively say that I did.

"*Q.* You are not able to say, then, that you have any personal knowledge of the weight of that car?

"*A.* That is it exactly.

"*Defendants' Counsel:* I object to his giving the weight of the car.

"*Q.* Have you in your possession a record of the weights of cars at that time?

"*A.* I have.

"*Q.* And that book you have had in your possession all this time?

"*A.* Yes, sir.

"*Q.* And you keep a correct record there of the weight of cars?

"*A.* Yes, sir; of all cars.

"*Q.* If you did not weigh this car, it was weighed under your supervision?

"*A.* ·Yes, sir.

"*The Court:* Is this the book of original entry? Is that where it is entered right from the scales?

"*A.* No, sir; the cars are weighed on a card, and I take the card in and turn it over to my assistant or clerk, and he copies it from the card into this book, and the cards are put into the waste basket generally.

"*Q.* Did you compare the weight from the card onto this book?

"*A.* Yes, sir."

The court then asked of defendants' counsel, "Do you insist upon your objection?" and counsel stated:

"There is no rule of law that makes a railroad record of weights and measures admissible. The man who weighed the car should be here, so we can cross-examine him, and see what method he pursued, and what the conditions were, and whether he knows that the weight was correctly taken. The man that weighed the car should be brought in here."

This objection was overruled by the court, exception taken, and the witness permitted to testify from the record in the book as to the weight of the car. On cross-examination the witness testified:

"I do not know whether I weighed this car myself. I have no recollection of doing so. All I know is that I have a book here that states that; and I know that this is our system. The book is not in my handwriting. I made no entries on it, and I could not swear that I made the entry on the card from which this is copied."

This testimony was given for the purpose of showing that the wood was dry at the time it was put on board the car at Manton. The only question in the case is whether

the wood was dry or not; and therefore the testimony as to its weight became of importance in determining whether the plaintiffs had fulfilled their contract. This was emphasized by the charge of the court in directing the jury that, if they found that this wood was dry when it was loaded on the car at Manton and shipped to defendants, their verdict should be for plaintiffs. Thus the only important question for our determination is whether the testimony which the court permitted to be given by the witness Murphy was competent. While this witness could not testify that he weighed the car and made the entry on the card, and it was impossible to ascertain who did, because the card was destroyed, the entry was made on the book from the card in the regular course of business. Primary evidence of the entry on the card was unattainable, but the witness testified that he compared the entry on the book with the card, thereby, perhaps unnecessarily, re-enforcing the evidence of the books themselves. This evidence was admissible, under the rule that cotemporaneous entries in the regular course of business in his books by one not a party to the cause is competent. See 1 Greenl. Ev. 16th Ed. § 120a, and cases cited; *Lassone* v. *Boston & Lowell Railroad*, 66 N. H. 345 (24 Atl. 902, 17 L. R. A. 525).

Other questions are raised, but we consider them unimportant.

The judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.